Linda L. CASH

v.

TIDEWATER MARINE, INC.

No. Civ.A. G–98–257.

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 29, 1999.

Ronald L. White, Brown Sims Wise & White, Houston, TX, for Ron White, mediator.

Dennis M. McElwee, Schechter and Marshall, Houston, TX, for Linda L. Cash, plaintiff.

Chris Andrew Lorenzen, Crain, Caton and James, Houston, TX, for Tidewater Marine Inc., defendant.

### ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff brings this suit under the Jones Act, 46 U.S.C.App. § 688 et seq., and general maritime law. Two separate incidents or groups of incidents form the basis of the suit. First, Plaintiff alleges that she suffered severe injuries as a result of an accident aboard the vessel on which she served, the DISCOVERY SEAHORSE. Second, Plaintiff alleges that she suffered repeated incidents of physical and verbal sexual harassment at the hands of crewmembers and superior officers and that Defendant negligently allowed those incidents to continue. Now before the Court is Defendant's Motion for Partial Summary Judgment of December 3, 1998. Defendant argues that the Jones Act offers no remedy for the type of sexual harassment Plaintiff alleges and asks the Court to dismiss all such claims made under the Jones Act. For the reasons set forth below, Defendant's Motion is **DENIED.**

### I. FACTUAL SUMMARY

In September 1995, Plaintiff was serving as a seaman aboard the ESTAY TIDE, a vessel owned by Defendant.[1] On the second day of her hitch aboard that vessel, she alleges, the first mate made an overtly sexual

---

1. As Defendant's Motion concerns only Plaintiff's claims of sexual harassment, the Court will not go to any lengths in summarizing her personal injury claim.

overture toward her. Plaintiff responded to the mate that she was not there to be his sexual plaything but rather to perform her job. She subsequently reported the mate's conduct to a supervisor. She never worked on the same vessel with that mate again.

A few months later, Plaintiff was serving as a seaman aboard the MOBILE SEAHORSE when the vessel's captain and another crewmember approached her. Plaintiff was watching television in the vessel's galley during her off time when the two men entered the room, sat on either side of her, and allegedly began poking her in the ribs. After they failed to heed her requests to stop, she crawled under the galley table to get away from them. A few days after that incident, the captain allegedly approached her in the galley and told her to get on her knees so she could perform her "job." She stated that she jumped up to get away from him and that he responded by grabbing her arm and pulling her back down. She sustained a bruise to her arm.

In March 1996, Plaintiff was on light duty status for Defendant. She was driving a co-employee to a shipyard in Houma, Louisiana when he told her that he wanted more than a work relationship with her. She told him that she was not interested, but he allegedly responded by saying that "he would kill anyone who told him no and that he was on a fine line between sane and insane." A few days later, he allegedly confronted her as she parked her truck by opening her door, grabbing her head, and kissing her on the lips. He then pushed her down against the seat, "popping" her back, and left only after a guard approached.

Later that spring, Plaintiff was serving aboard the vessel SABER SERVICE with the same worker who had accosted her in March. During the second week of her hitch aboard that vessel, the man entered her room. After a brief verbal exchange, Plaintiff stated, he got angry, jerked her shorts down, and threw her on the floor. He then allegedly tried to pull his pants down. However, Plaintiff told him that if he would get off of her and leave, she would not report his actions to their superiors. The man left, but returned the following morning. When he entered her room, Plaintiff stated, he jumped on her, pulled her shirt up, and began pressing his genitalia between her breasts. After a few minutes, she stated, he thanked her and then left her room. Plaintiff did not state whether or not she reported this incident to her supervisors.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. See id. at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. See id. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Dixon v. State Farm Fire & Casualty Co., 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255, 106 S.Ct. at 2513.

## III. ANALYSIS

Defendant argues that Plaintiff cannot maintain a Jones Act claim with respect to her allegations of sexual harassment and in-

timidation by Defendant's employees. Defendant cites *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260 (5th Cir.1991) for the proposition that the Jones Act permits recovery only where a plaintiff has suffered some significant physical injury. Here, Defendant points out, Plaintiff has alleged only emotional injury and thus cannot recover under the Jones Act.

Upon initial analysis, the Court questions why Plaintiff did not bring suit for sexual harassment under Title VII, 42 U.S.C. § 2000e et seq. Whatever the reason for that decision was, the Court declines to here speculate. However, the import of that decision is that Plaintiff must now satisfy the requirements of the Jones Act. That is significant because the Jones Act does not permit a cause of action for sexual harassment per se. *See id.* at 264–65. What the Jones Act does cover is harassment of the sort that would amount to common-law battery. *Id.* at 265.[2] The requirements for such a cause of action appear to include (1) tortious physical contact and (2) physical injury. *Id.* at 265–66.

Plaintiff has clearly alleged several instances of tortious physical contact. She was subjected to poking from her captain and one other crewmember and was later grabbed by the arm. In another instance, a crewmember forcibly grabbed her head and kissed her, then pushed her down onto the seat of the truck she was driving. Later, the same crewmember jerked her shorts down and pushed her to the floor of her room aboard Defendant's vessel. Finally, that crewmember entered her room, jumped on her, pulled her shirt up, and placed his genitalia between her breasts. These examples of unconsented contact by various employees of Defendant obviously satisfy the tortious physical contact requirement.

The second requirement, that of physical injury, is more problematic. Plaintiff has made several allegations of emotional injury, pointing out that she has undergone counseling and that she continues to feel humiliated, betrayed, and angry. In *Wilson*, the Fifth Circuit declined to reach the issue of whether the Jones Act permits a cause of action based on pure emotional injury. *Wilson*, 939 F.2d at 266 n. 8. Consequently, it remains unsettled in this Circuit whether Plaintiff's emotional injuries would suffice to create a Jones Act cause of action.[3] However, Plaintiff has alleged at least one ostensibly physical injury. Since the incidents of sexual harassment at the hands of Defendant's employees, Plaintiff alleges that she has suffered from sexual dysfunction. While such injury is not a direct result of the physical contact suffered by Plaintiff, it is a result of the emotional trauma caused by those contacts. *See Williams v. Treasure Chest Casino*, Nos. Civ.A. 95–3968, Civ.A. 97–0947, 1998 WL 42586, at *6 (E.D.La. Feb.3, 1998) (holding that vomiting, sexual dysfunction, and weight

---

**2.** The Jones Act incorporates by reference the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA"). *See* 46 U.S.C.App. § 688 (providing that "all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply" to Jones Act seamen). FELA does not create new substantive torts; rather, it simply protects railway workers from common law torts. *See Wilson*, 939 F.2d at 264–65. Because the cause of action for sexual harassment is a creation of statute, not common law, it is not recognized under FELA, or by extension the Jones Act. *Id.* Where sexual harassment includes instances of nonconsensual physical contact, however, it may amount to common-law battery. *Id.* In those cases, a seaman plaintiff might have a cause of action under the Jones Act.

**3.** Plaintiff argues in her response to Defendant's Motion for Partial Summary Judgment that pure emotional injury resulting from physical impact is actionable in Jones Act cases under a theory of negligent infliction of emotional distress. *See Consolidated Rail Corporation v. Gottshall*, 512 U.S. 532, 554–56, 114 S.Ct. 2396, 2410–11, 129 L.Ed.2d 427 (1994) (holding that a plaintiff may bring a claim for negligent infliction of emotional distress under the "zone of danger" theory, by demonstrating that he either suffered a physical impact or was placed in immediate risk of physical harm by defendant's negligent conduct). While that may be the case, the Court, try as it might, is unable to read anything in Plaintiff's complaint as alleging negligent infliction of emotional distress. The Court may not consider such a theory raised for the first time at the summary judgment stage.

loss satisfied the physical injury requirement where they resulted from emotional trauma caused by tortious physical contact); *see also Wilson,* 939 F.2d at 265 (holding that weight loss, vomiting, and diarrhea satisfied the physical injury requirement where they accompanied physical contact). As physical injuries go, sexual dysfunction by itself does not provide the strongest possible basis for Jones Act liability. However, in light of the present state of this Circuit's case law, sexual dysfunction may satisfy the physical injury requirement where it can be traced to tortious physical contact. Accordingly, the Court is unwilling at this juncture to grant partial summary judgment against Plaintiff's claim of sexual harassment under the Jones Act for lack of a physical injury. Defendant's Motion is **DENIED.**

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Partial Summary Judgment with respect to Plaintiff's claim of sexual harassment under the Jones Act is **DENIED.** This case will be set for trial at a later date. Without further commenting on the merits of the claims or defenses asserted, the Court will examine them again at that time. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**